JOHNNIE E. RUSSELL,

       Plaintiff,

v.              Case No. 21-cv-0151

COLIN POWELL,
DAVE WOHLGEMUTH, AND
RYAN COMSTOCK,

       Defendants.

---

**DEFENDANTS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

---

Defendants Colin Powell, Dave Wohlgemuth, and Ryan Comstock, by their attorneys, Wirth + Baynard submit this Amended Memorandum of Law in Support of Defendants' Motion for Summary Judgment, seeking complete dismissal of the Plaintiff's claims against them. Pursuant to the Court's scheduling order (ECF No. 32), and the Court's August 23, 2023, Order (ECF No. 57), the facts necessary to support this Motion for Summary Judgment are stated in the parties agreed-upon statement of facts and Defendants' amended separate statement of material fact ("DASSMF") filed contemporaneously herewith.

**ARGUMENT**

**I. SUMMARY JUDGMENT IS APPROPRIATE IF THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, establish that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the

absence of a genuine issue of material fact and that judgment as a matter of law should be granted to the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that is outcome-determinative of an issue in the case with substantive law identifying which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met this initial burden, the opposing party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 248. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 242. Nor will speculation, hearsay, or conclusory allegations suffice to defeat summary judgment. *Gobitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999).

Here, the undisputed facts show that the Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ILLEGAL SEARCH CLAIMS.

Plaintiff's allegations invoke his Fourth Amendment rights. The Fourth Amendment protects individuals from unreasonable searches. U.S. Const. amen. IV. The reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). This typically requires the government agent to have probable cause to conduct a search, which demands a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search warrant must be supported by probable cause; thus, warrantless searches that are conducted without consent "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz*

*v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). One such exception is a "protective sweep."

Critically, the Seventh Circuit has held that when police are responding to a possible crime, police judgments should be afforded an "extra degree of deference." *Reardon v. Wroan,* 811 F.2d 1025, 1029 (7th Cir.1987). The less intrusive a search, the less justification is required. This is true not only of street stops, *see United States v. Chaidez*, 919 F.2d 1193 (7th Cir.1990), but also of residential searches. *See United States v. Concepcion*, 942 F.2d 1170 (7th Cir.1991) (insertion of key in keyhole is a "search" but requires only slight justification). The question posed by the fourth amendment is not whether it would have been reasonable to get a warrant, but whether the search itself was reasonable. *United States v. Edwards*, 415 U.S. 800, 807 (1974).

In this case, it is undisputed that Officer Powell conducted a protective sweep of Plaintiff's apartment without a search warrant. In addition, it is undisputed that Lieutenant Wohlgemuth's subsequent search of Plaintiff's apartment was pursuant to a valid search warrant as was Lieutenant Wohlgemuth and Officer Comstock's search of Plaintiff's vehicle. Therefore, Plaintiff's Fourth Amendment claims should be dismissed against all Defendants.

### A. Officer Powell's entry into Plaintiff's apartment to conduct a protective sweep was reasonable.

Officer Powell's entry was within the permissible scope of a "protective sweep." In *Maryland v. Buie*, the Supreme Court first identified the "protective sweep" as an exception to the warrant requirement of the Fourth Amendment. 494 U.S. 325, 334 (1990). Specifically, the Court described two circumstances where the police, to ensure their own safety without unnecessarily intruding on the Fourth Amendment rights of a criminal defendant, could engage in a "quick and limited" "visual inspection of those places in which a person might be hiding" in a premises. *Id.* at 327. First, officers, "as an incident to the arrest" and "as a precautionary matter and without

3

probable cause or reasonable suspicion," are permitted to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Second, where "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger," the search may extend beyond the parameters of the first type of protective sweep. *Id.* Such a sweep must not last "longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335–36.

The standard that governs a protective sweep is "reasonable suspicion", a lower threshold than probable cause, *United States v. Booker*, 579 F.3d 835,839 (7th Cir. 2009), that requires the officers to be acting on more than a "hunch." *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) In the case of a protective sweep outside of the immediate vicinity of a detained suspect, the Supreme Court has held that reasonable suspicion must take the form of "articulable facts which, taken together with the rational inferences from those facts," would warrant believing that the area to be swept harbors someone posing a danger to those on the scene. *Buie* at 334. This standard by no means requires absolute certainty by the law enforcement officials regarding the risks posed to them. *See United States v. Sholola*, 124 F.3d 803, 813 (7th Cir.1997) ("[T]he 'reasonable suspicion' standard, by its very nature, allows for some degree of ambiguity or uncertainty.").

Indeed, several Seventh Circuit cases have approved of protective sweeps employed in situations far less dire than those confronting the officers here and where the police based their actions on evidence that was, at best, inconclusive as to the dangers facing them in the area to be swept. *See, e.g., United States v. Barker*, 27 F.3d 1287, 1291 (7th Cir.1994) (holding that knowledge of a gun in a home and the possibility that other people "might very well have been within" the home by an officer executing an arrest warrant justified a protective sweep); *United States v. Richards*, 937 F.2d 1287, 1292 (7th Cir.1991) (holding that the police lawfully performed a

4

protective sweep in searching for an unknown assailant who officers "did not know" was in the apartment, based on the knowledge that the person who answered the door was acquainted with the assailant, the apartment was in a dangerous neighborhood, and the police were not provided with a confirmation or denial that another suspect was in the house); *United States v. Tapia,* 610 F.3d 505, 511 (7th Cir. 2010) (upholding the legitimacy of a protective sweep in the basement of the home when officers had some indication, such as a large van parked outside the home and knowledge that a home was used for violent gang members to congregate, that the home contained multiple parties).

Whether a protective sweep was justified by the circumstances facing the police necessitates a "very fact-specific" inquiry. *United States v. Burrows*, 48 F.3d 1011, 1016 (7th Cir.1995). Indeed, the Seventh Circuit has called for a "careful, detached and demanding scrutiny" of the facts behind a protective sweep, *id.* at 1018, looking at a series of factors such as the "configuration of the dwelling" in question, the "characteristics of those known to be present and who might be present," and the nature of the "general surroundings, especially its history in previous law enforcement efforts." *Id.* at 1016. These factors need to be evaluated through the lens of what was reasonably known to the officer at the time the protective sweep occurred. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 404 (2006).

Moreover, any analysis regarding the reasonableness of a protective sweep "requires that the circumstances of the particular encounter be assessed carefully in light of the overarching policy concerns articulated" by the Supreme Court in *Buie* and its progeny, including a "proper regard" for the safety of police officers, who "have an interest in ensuring their safety when they lawfully enter a house." *Leaf v. Shelnutt,* 400 F.3d 1070, 1087 (7th Cir.2005) *Buie* is not limited to the arrest context. *See Leaf* at 1087–88. ("The underlying rationale for the protective sweep doctrine is the principle that police officers should be able to ensure their safety when they lawfully

enter a dwelling ... [a]ccordingly, it was not necessary for the officers to have made an arrest in order for their search of the apartment to be justified"); *see generally Leslie A. O'Brien, Finding A Reasonable Approach To The Extensions Of The Protective Sweep Doctrine In Non–Arrest Situations*, 82 NEW YORK UNIV. L. REV. 1139, 1156 (Oct. 2007) ("The majority of circuits have extended the *Buie* protective sweep doctrine to situations where officers have lawfully entered a home for reasons other than an arrest."). Accordingly, officers can perform a protective sweep of an area outside of the context of when a person is lawfully arrested.

Applying these principles to the case at hand, articulable facts would have warranted a reasonably prudent officer legally situated in the common area of an apartment building in believing apartment (#202) harbored an individual posing a danger to those on the scene. The officers were called to the scene to investigate a stabbing at an apartment building. Upon arriving on the scene, officers soon learned at least three critical facts. First, officers learned the victim, had identified Plaintiff as the person who stabbed him. Second, officers learned Plaintiff lived in apartment (#202). Third, officers learned Plaintiff may have returned to his apartment following the stabbing. (DASSMF ## 3, 7) Given the lenient standard of reasonable suspicion, this Court should conclude Officer Powell performed a protective sweep of the residence on much more than a "hunch," but instead based on specific and articulable reasons. *Id.*

Materially, Officer Powell did not stay longer than required to fulfil the purpose of the protective sweep. The protective sweep lasted approximately 37 seconds and was limited to spaces where a person could be found. (DASSMF # 11) As soon as Officer Powell determined nobody was in the apartment he exited and waited for a search warrant. *Id.* Summary judgment in favor of Officer Powell is therefore warranted.

**B.** **Any search by Lieutenant Wohlgemuth was pursuant to a valid search warrant.**

6

Plaintiff has been allowed to proceed on a claim that Lieutenant Wohlgemuth violated his Fourth Amendment rights when he searched his apartment and vehicle. (ECF No. 11 at 8) To state a claim under 42 U.S.C. § 1983, Plaintiff must satisfy two elements: 1) he must prove a violation of rights secured by the Constitution and laws of the United States; and 2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Section 1983 creates a cause of action for damages based upon personal liability. Initially, Plaintiff must show that each named defendant was personally involved in the alleged illegal search because § 1983 liability is predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation. *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1034 (7th Cir. 2003).

Here, Plaintiff cannot establish that Lieutenant Wohlgemuth was involved in any search of his apartment or vehicle except pursuant to a valid warrant. (DASSMF ## 9, 10) The fact that Plaintiff was unwilling to "exonerate" Lieutenant Wohlgemuth in the agreed upon statement of facts is immaterial for summary judgment purposes. This is because "'It is well-settled that speculation may not be used to manufacture a genuine issue of fact.'" *SportFuel, Inc. v. PepsiCo, Inc.,* 932 F.3d 589, 601 (7th Cir. 2019). Any assertion by Plaintiff, who was not on scene during the search, that the search preceded the warrant is mere speculation. Rather, the undisputed facts show Lieutenant Wohlgemuth was present at the scene to execute the search warrant. (DASSMF ## 9, 10) Summary judgment in favor of Lieutenant Wohlgemuth is therefore warranted.

**C.**        **Sergeant Comstock was involved in a search of Plaintiff's vehicle to execute a valid search warrant.**

Plaintiff has also been allowed to proceed on a claim that Sergeant Comstock violated his Fourth Amendment rights when he searched Plaintiffs' vehicle. (ECF No. 11 at 8) As discussed above, any assertion by Plaintiff that the opening of his trunk preceded the warrant is mere

7

speculation. Rather, the undisputed facts show Sergeant Comstock opened the trunk in execution of the search warrant. (DASSMF # 10) Summary judgment in favor of Sergeant Comstock is therefore warranted.

**II.      THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY REGARDING PLAINTIFF'S CLAIMS.**

The Defendants are entitled to the defense of qualified immunity regarding Plaintiff's claims. Qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Claims of qualified immunity involve two inquiries: 1) whether the official violated a constitutional or statutory right, and 2) whether the right was clearly established at the time of the alleged misconduct. A negative answer to either question entitles the official to the defense and the court may, in its discretion, take the second inquiry first. *Id.* (citations omitted).

A plaintiff can overcome the presumption of immunity only by carrying the heavy burden of showing both that the defendant officer in question violated one of the plaintiff's constitutional rights and that the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he was doing" violated the law. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 2083 (2011). Failure on either qualified immunity element is fatal to the plaintiff's cause. *Id.* The United States Supreme Court has instructed that courts should proceed directly to and deny relief exclusively based on the second element, *Camreta v. Greene*, 131 S. Ct. 2020, 2032 (2011).

The defense of qualified immunity shields "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly  established statutory or constitutional rights of which a reasonable person would

8

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted). The principle behind the doctrine is that if the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he or she fairly be said to know that the law forbade conduct not previously identified as unlawful. *Id.* The Seventh Circuit has noted that "[w]hat is important, in the final analysis, is 'whether the legal norms governing [the government official's] behavior were clearly established at the time of the challenged actions.' " *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (citations omitted).

Qualified immunity affords a government official broader protection than does the merits defense that no constitutional violation occulted. Regardless of whether the constitutional violation occurred, the government official should prevail if the right asserted by the plaintiff was not clearly established, in the particularized sense that "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Even where the rights allegedly violated may be clear at some level of abstraction, the government official should prevail if a reasonable officer could have believed that his or her particular conduct was lawful. *Id.* at 641. This is a fact-specific, objective test. *Id.* Furthermore, the Seventh Circuit has held that the question asked must be "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Apostol v. Landau*, 957 F.2d 339, 341 (7th Cir. 1992) (citations omitted).

The Seventh Circuit has stated with respect to qualified immunity that it is "designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.' " *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). It should be applied unless "it has been authoritatively decided that certain conduct is forbidden." *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987)). Qualified immunity thus provides officers with an

9

additional layer of protection against civil liability. *Hughes* at 970.

Defendants respectfully refer the Court to the above arguments and reassert that no case law precludes the actions taken by the defendants. Frankly, the above cited case law suggests otherwise. Because no case law has determined that any action of these officers was unlawful, their actions did not violate a known constitutional right. Therefore, the actions of the defendants are entitled to the protection of qualified immunity.

**CONCLUSION**

Based upon the above discussion, the Defendants respectfully assert that they are entitled to summary judgment and dismissal of the above-captioned case.

Dated this 5th day of October, 2023.

WIRTH + BAYNARD
Attorneys for Defendants

*/s/ Ryan J. Truesdale*
Ryan J. Truesdale
WI State Bar No. 1092417
9898 West Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979 / F: (414) 291-7960
Email: rjt@wbattys.com

10