# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHNNIE E. RUSSELL,

        Plaintiff,

v.

SGT. COMSTOCK, COLIN POWELL, and LT. WOHLGEMUTH,

        Defendants.

Case No. 21-CV-151-JPS

**ORDER**

    Plaintiff Johnnie E. Russell ("Plaintiff"), who is incarcerated at the Wisconsin Resource Center, proceeds in this matter pro se. On October 6, 2021, the Court screened Plaintiff's complaint and allowed Plaintiff to proceed on the following two claims: (1) unreasonable search of Plaintiff's apartment, in violation of the Fourth Amendment, by Defendants Powell and Wohlgemuth on June 25, 2020; and (2) unreasonable search of Plaintiff's car, in violation of the Fourth Amendment, by Defendants Wohlgemuth and Comstock on June 25, 2020. ECF No. 11 at 8. On August 15, 2022, the Court issued a scheduling order with summary judgment motions due on or before February 28, 2023. ECF No. 32.

    On February 28, 2023, Defendants filed a motion for summary judgment. ECF No. 43. On August 23, 2023, the Court denied Defendants' motion for summary judgment, without prejudice, and allowed the parties the opportunity to filed renewed motions. ECF No. 57. On October 5, 2023, Defendants filed an amended motion for summary judgment. ECF No. 58. On October 6, 2023, Plaintiff filed a declaration opposing the revised joint statement of material facts. ECF No. 70. On October 17, 2023, Plaintiff filed an opposition to the motion for summary judgment. ECF No. 73. On October 20, 2023, Defendants filed a reply brief. ECF No. 74. As such,

Defendants' motion for summary judgment is fully briefed and ready for disposition. As discussed in detail below, the Court grants Defendants' amended motion for summary judgment in full and will accordingly dismiss this case with prejudice.

## 1. LEGAL STANDARD — SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

In compliance with the Court's scheduling order, Defendants submitted a statement of joint proposed material facts. ECF No. 65. As such, the following facts are taken directly from the parties' joint statement of material facts with only minor grammatical editing. Defendants also included a list of separate disputed facts, ECF No. 66, which the Court will address separately below.

On June 25, 2020, at approximately 1:10 p.m., Racine Police Department Officers were dispatched to 1915 Washington Avenue, Racine,

Page 2 of 15
Case 2:21-cv-00151-JPS    Filed 12/14/23    Page 2 of 15    Document 77

Wisconsin for an assault complaint. On that date, Plaintiff resided at 1915 Washington Avenue, Apt. 202. Willie Cannon also resided at 1915 Washington Avenue in Apt. 103. At the time, Plaintiff owned two vehicles, a silver 1994 Cadillac Sedan and a silver 2001 Mercury Grand Marquis. Upon arrival at 1915 Washington Avenue, officers learned Willie Cannon had been stabbed in the chest, and he identified Johnnie Russell, Plaintiff, as the suspect who had stabbed him. Cannon required medical attention and was transported via rescue to Ascension hospital. Plaintiff had actually left the building in his Mercury immediately after Cannon was stabbed.

Investigator Jody Spiegelhoff arrived on scene and met with the building manager, Johnny Marvitz, who stated Plaintiff parked his two vehicles a silver Cadillac and a silver Mercury— along the east side of the building. Marvitz further indicated that Plaintiff lived in Apartment 202 and he was uncertain if Plaintiff had gone back to his apartment. Investigator Spiegelhoff and Sergeant Ryan Comstock secured Cannon's apartment (#103) by doing a protective sweep to make sure there was nobody inside injured related to the case. Property Manager, Jerome Howe unlocked the door of apartment (#202) and Officer Colin Powell entered Plaintiff's apartment (#202) and cleared it—without a warrant. Officer Powell was then assigned to guard Plaintiff's apartment pending a search warrant. Investigator Spiegelhoff then drafted a search warrant application.

On June 25, 2020, at 5:23 p.m., a search warrant for 1915 Washington Avenue, Apartment 202, was authorized by the Honorable Faye M. Flancher allowing a search of any persons in and around the premises, basement storage, vehicles, and other outbuildings associated with the property. Lieutenant Wohlgemuth attempted to get the trunk of the Cadillac open, however, the trunk was not opening and after trying a few different options to open the trunk, Sergeant Comstock arrived and was

able to breach the trunk with a pry bar. Defendants' use of the pry bar caused damage to the Cadillac.

As a result of the June 25, 2020 incident, Plaintiff was charged with 2nd Degree Reckless Injury and Aggravated Battery – Intent to Cause Bodily Harm, and on January 27, 2021, Plaintiff was found guilty of 2nd Degree Reckless Injury and Aggravated Battery.

Defendants provide additional proposed findings of fact, ECF No. 66, that Plaintiff purportedly disputes, *see* ECF No. 70. Plaintiff states that he does not agree with specific times of certain officers and generally that the facts "do not tell the truth as [Plaintiff] know[s] it." *Id.* Plaintiff does not, however, provide any factual support for his dispute of Defendants' additional facts. Nor could he; the parties agree that Plaintiff left the building immediately after the victim was stabbed, ECF No. 65 at 1, and Plaintiff has provided no factual basis, such as witness statements or other evidence, to support his generalized factual disputes. As such, the Court deems Defendants' additional proposed findings of fact, ECF No. 66, as undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2). The Court therefore considers the following additional facts.

Officer Coca arrived on the scene at 1:15 p.m. Dispatch informed the officers that there was an assault in progress involving a suspect that may have a knife and that the victim was bleeding. Dispatch also informed the officers that the suspect may have returned to his apartment. Upon arrival at the scene, Willie Cannon did not have a knife. Officer Powell arrived at the scene at around 2:31 p.m. Investigator Spiegelhoff arrived at the scene at around 2:40 p.m. The protective sweep was performed based upon information provided by the building manager, Mr. Marvitz, and Racine Dispatch, who were uncertain of Plaintiff's location, and noted Russell's apartment was left unattended after the

stabbing. From the officers' perspective, the purpose of the protective sweep was to make sure there was nobody inside who could pose a danger to individuals, officers, or bystanders, on scene or injured while waiting on a search warrant; they were not looking for evidence. Lieutenant Wohlgemuth participated in the search of Plaintiff's apartment after a valid warrant for the search of the apartment had been signed. Before Lt. Wohlgemuth and Sgt. Comstock opened the trunk of Plaintiff' vehicle, a valid warrant for the search of the vehicle had been signed. Officer Powell's "clearing" of Plaintiff's apartment was limited to a cursory inspection of spaces where a person may be found and lasted approximately thirty-seven seconds, occurring from 2:43:46 p.m. to 2:44:23 p.m.

### 3. ANALYSIS

Defendants' motion for summary judgment seeks dismissal of all claims in the case. First, Defendants argue that they are entitled to summary judgment on the warrantless search of Plaintiff's home claim because Defendant Powell's entry into the home was reasonable under the "protective sweep" doctrine. ECF No. 59 at 3. Second, Defendants argue that Defendant Wohlgemuth and Comstock's searches of Plaintiff's residence and car were lawfully conducted pursuant to a valid search warrant. *Id.* at 6–7. As discussed below in detail, the Court grants summary judgment on all claims and will dismiss this case with prejudice.

#### 3.1 Warrantless Search of Plaintiff's Home

The parties agree that Defendant Powell initially searched Plaintiff's home without a warrant. The parties disagree, however, on the legal issue of whether the search violated the Fourth Amendment. "Warrantless searches are *per se* unreasonable under the Fourth Amendment, unless an exception applies." *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021).

However, warrantless searches are constitutionally permissible "under certain narrowly proscribed exceptions." *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010). Defendants argue that the search in this instance was reasonable as a protective sweep under *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

In *Buie*, the Supreme Court first identified the "protective sweep" as an exception to the warrant requirement of the Fourth Amendment. *Id.* at 334. Specifically, the Court described two circumstances where the police, to ensure their own safety without unnecessarily intruding on the Fourth Amendment rights of a criminal defendant, could engage in a "quick and limited" "visual inspection of those places in which a person might be hiding" in a premises. *Id.* at 327. First, officers, "as an incident to the arrest" and "as a precautionary matter and without probable cause or reasonable suspicion," are permitted to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Second, where "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger," the search may extend beyond the parameters of the first type of protective sweep. *Id.* Such a sweep must not last "longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335–36. In this case, it is undisputed that the search performed by the police falls under the second set of circumstances provided by *Buie*, as the police were not performing their search incident to any arrest.

The inquiry as to the reasonableness and validity of a protective sweep is necessarily fact-specific. *United States v. Burrows*, 48 F.3d 1011, 1016 (7th Cir. 1995). "A protective sweep is not justified where there is a 'mere inchoate and unparticularized suspicion or hunch' of danger." *United States*

*v. Tapia*, 610 F.3d 505, 510 (7th Cir. 2010) (internal citations omitted). "The less intrusive a search, the less justification is required." *United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995). "The question posed by the fourth amendment is not whether it would have been reasonable to get a warrant, but whether the search itself was reasonable." *Id.* (citing *United States v. Edwards*, 415 U.S. 800, 807 (1974)).

Generally, when officers perform a protective sweep, they are already lawfully in the residence. *See, e.g.*, *Buie*, 494 U.S. at 336–37. However, the Court of Appeals for the Seventh Circuit has also interpreted the protective sweep doctrine as authorizing officers to enter homes in certain instances. *See United States v. Henderson*, 748 F.3d 788, 791 (7th Cir. 2014); *see also Burrows*, 48 F.3d at 1016 ("We have also recognized that officers may be at as much risk while in the area immediately outside the arrestee's dwelling as they are within it. 'A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another.'" (quoting *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir. 1989)); *United States v. Duncan*, No. 20-CR-169-PP, 2021 WL 4892291, at *12 (E.D. Wis. Oct. 20, 2021) ("[T]he court concludes that they were justified in *entering* the home to conduct a protective sweep.") (emphasis added).

Applying these principles to the case at hand, the Court finds that Defendants have shown articulable facts that would have warranted a reasonably prudent officer in believing that a protective sweep of Plaintiff's residence was necessary. The Court acknowledges that this is a close case and is mindful that protective sweeps must be carefully scrutinized in order to protect Fourth Amendment principles. *See Burrows*, 48 F.3d at 1017 ("We must also recognize, however, that the sweep is a device that can easily be perverted to achieve ends other than those acknowledged as legitimate in *Buie*."). However, in looking at the over-arching question of whether the

Page 7 of 15
Case 2:21-cv-00151-JPS   Filed 12/14/23   Page 7 of 15   Document 77

search was reasonable, the Court finds that it was reasonable based on the specific facts present in this case.

First, the officers were dispatched to the property to investigate a serious crime. Dispatch informed officers that there was an assault in progress involving a suspect that may have a knife and that the victim was bleeding. Upon arrival to the scene of the crime, officers learned from the victim that he had been stabbed in the chest by Plaintiff and the victim was not in possession of the knife. The stabbing was of a serious nature and required the victim's transport to a hospital via rescue.

Second, Plaintiff's whereabouts were unknown at the time of the search. Although it is undisputed that Plaintiff was *not* present or anywhere near his home during the search, a reasonable officer could have reasonably believed that Plaintiff was located in his apartment at the time of the search. Prior to their arrival, Dispatch had informed the officers that the suspect may have returned to his apartment. Upon arrival, officers learned from the apartment manager that Plaintiff lived in Apartment 202 and that he was uncertain if Plaintiff had gone back to his apartment following the stabbing. The Court pauses here momentarily to address the potential factual dispute of whether officers reasonably believed Plaintiff may have been in his home at the time of the search. The parties' undisputed facts state that the apartment manager indicated that he was uncertain if Plaintiff had gone back to his apartment. ECF No. 65 at 2. In Plaintiff's opposition, however, Plaintiff maintains that the video "clearly shows the investigator [spieglehoff] verifying plaintiff is gone in his grand marquis silver" and that the apartment manager "states that plaintiff is gone a few times in the video." ECF No. 73 at 2. The Court notes that neither party provided a transcript for the body camera video provided in the record, so the Court cannot say with one-hundred percent certainty what specific language was

used by any party on the video. However, the Court has carefully reviewed the body camera video and agrees with Defendants that it was, at the very least, unclear whether Plaintiff still on the property at the time of the protective sweep search. The video evidence speaks for itself and, therefore, the Court does not consider this fact to be in dispute for the purposes of this Order. Based on the facts available to the officers at the time of the search, the Court finds that a reasonable officer could have believed Plaintiff was in the apartment at the time of the search and could be a danger to the officers or the public based on his recent knife attack.

Third, the apartment manager indicated that Plaintiff's residence was left unattended after the stabbing. Fourth, the apartment manager told the officers that a third, unknown and unaccounted for person, was visiting at the time of the stabbing.[1] And fifth, the undisputed video evidence shows that the search was extremely limited, lasting only thirty-seven seconds, and was limited to a cursory inspection of spaces where a person could be found.

The Court likens this case to *United States v. Henderson*, 748 F.3d 788, 791–92 (7th Cir. 2014), where the Seventh Circuit found a protective sweep of a house was reasonable *after* the alleged abuser and the victim were both detained outside the house. *Id.* at 791-92. There, the court found the following record "replete with specific and articulable facts" for the officers to reasonably conclude that the officers or others faced a dangerous

---

[1]The Court acknowledges that Defendants did not include any facts about the potential presence of a third party in their initial filings and instead only addressed it in their reply brief. *Compare* ECF Nos. 65, 66 *with* ECF No. 74. However, while the Court *need* only consider the cited materials, it *may* consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Defendants provided the body camera footage along with their initial submissions. *See* ECF No. 63-1. The Court finds the video evidence speaks for itself and therefore considers it in the analysis of what the officers knew at the time of the search.

situation without a protective sweep of the house. *Id.* at 791. The court relied on the following facts:

> The SWAT team received a report of a hostage situation, validated by text messages on [a third party's] phone and the officers' sighting of movement within the house. The text messages from [the victim] said that she was being held by [Henderson] with a gun. The officers called over the PA loudspeaker for over an hour demanding for the occupants of the house to come out, but instead of cooperating, the occupants remained locked in the house. The officers did not know how many occupants or what the occupants were doing inside the house during the standoff. [The victim] appeared to be frightened when she exited. When [the victim] and Henderson exited the house, neither were armed. All of the doors were locked and the house was two stories; large enough for others to hide and ambush the officers or bystanders. The SWAT team had information that Henderson possessed a gun but no weapons were found on his person when he was arrested.

*Id.* at 792. The search lasted five minutes or less and was performed approximately five to ten minutes after Henderson was arrested. *Id.* at 789–90. Based on these facts, the court found that it was reasonable to infer that an armed and dangerous person remained in the house, and that a "'bevy of facts support[ed] the conclusion that such a sweep was reasonable and prudent.'" *Id.* at 792 (quoting *United States v. Starnes,* 741 F.3d 804, 810 (7th Cir. 2013).

Here, like *Henderson,* the officers were confronted with a dangerous situation with a weapon unaccounted for and, in this case, the weapon had already been used to seriously injure at least one person. In *Henderson,* the alleged hostage-taker *and* victim were secured by officers outside prior to the search of the house; here, only the victim was located, and officers had specific reason to believe that Plaintiff may have returned to his apartment. In *Henderson,* there was no specific indication that any third parties were involved whereas here, the apartment manager indicated a third-party was

present during the stabbing. The Court acknowledges that the facts surrounding the presence of a possible third party in this case are extremely limited, and there was no specific allegation that the third party had either been injured or taken part in the knife-attack. Despite this fact, the Court nonetheless finds that a reasonable officer faced with these specific facts could have been concerned for the well-being of a possible third party given Plaintiff's recent violent attack and his unknown whereabouts.

One may argue that a search of Plaintiff's residence was not needed to prevent any potential attack from Plaintiff because the officers could have instead simply waited outside the apartment door until a warrant was secured. However, to begin, this line of argument would ignore the possibility that a third party was in the apartment and possibly in need of assistance. Moreover, where "police have good grounds to believe that potentially dangerous individuals could be in [a location], a protective sweep into that area is reasonable regardless of whether there might be a 'less intrusive investigatory technique' for securing that area." *United States v. Tapia,* 610 F.3d 505, 511 (7th Cir. 2010), *as amended on denial of reh'g* (Aug. 16, 2010) (quoting *United States v. Winston,* 444 F.3d 115, 120 (1st Cir. 2006)). Here, following the protective sweep, Defendant Powell was assigned to guard Plaintiff's apartment pending a search warrant. Based on the information the officers had from both Dispatch and the apartment manager, the officers had an articulable and reasonable belief that Plaintiff may have been inside his apartment with a knife he had already used to seriously injure someone. Although a less intrusive investigatory technique could have been used to secure Plaintiff's apartment, the Court finds the officers reasonably believed a protective sweep was necessary to ensure Plaintiff would not launch an attack from his apartment while officers secured a search warrant.

Finally, the Court strongly emphasizes the importance the limited nature of the search (in both duration and scope) plays in its decision today. *See Brown*, 64 F.3d at 1086 ("The less intrusive a search, the less justification is required."). Unlike *Henderson,* where the search lasted up to five minutes, the search here lasted a mere thirty-seven seconds. The officers limited the scope of the search to places only where a person could be located. The intrusion into Plaintiff's home was extremely limited. The undisputed record shows that Defendant Powell swept the apartment only for as long was needed to determine whether another person was located inside the residence. Following the protective sweep, and discussed below, the officers properly sought a warrant before performing a full search of the apartment to search for evidence of the crime.

In sum, the Court finds that articulable facts, which taken together with the rational inferences form those facts, would warrant a reasonably prudent officer to believe that a protective sweep of Plaintiff's apartment was necessary. While the Court recognizes the importance of protecting the sanctity of the home, the Court finds that based on the totality of the circumstances known to officers when they made the decision to enter Plaintiff's apartment, the search on these specific facts was reasonable. As such, the Court will grant Defendants' motion for summary judgment as to Defendant Powell's warrantless search of Plaintiff's home.

### 3.2    Wohlgemuth and Comstock Searches

Finally, the Court finds that Defendant Wohlgemuth's search of Plaintiff's residence and Defendant Wohlgemuth's and Defendant Comstock's search of Plaintiff's car did not violate the Fourth Amendment because the undisputed facts show that the searches were conducted pursuant to a valid search warrant. Searches undertaken pursuant to valid search warrants are presumptively valid. *Archer v. Chisholm*, 870 F.3d 603,

613 (7th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978)). The parties agree that a search warrant for 1915 Washington Avenue, Apartment 202, was authorized by the Honorable Faye M. Flancher on February 25, 2020, at 5:23 p.m., allowing a search of any persons in and around the premises, basement storage, vehicles, and other outbuildings associated with the property. ECF No. 65 at 1. The parties dispute, however, whether the searches occurred before or after the warrant issued.

Defendants provide evidence that Defendant Wohlegemuth participated in the search of Plaintiff's residence only *after* a valid warrant for the search of Plaintiff's residence had been signed. ECF No. 66 at 2. (citing Wohlgemuth Decl. ¶¶ 4, 6, 7, 13; Am. Spiegelhoff Decl. ¶¶ 22, 23, 24; Garcia Decl. ¶¶ 3, 4; Garcia Ex. A). Defendants also provide evidence to show that the search of Plaintiff's car occurred *after* a valid search warrant for the search of the vehicle had been signed. *Id.* (citing Wohlgemuth Decl. ¶¶ 8-11, 13; Comstock Decl. ¶¶5-9; Am. Spiegelhoff Decl. ¶¶ 22, 28, 29; Garcia Decl. ¶¶ 3, 4; Garcia Ex. A). Plaintiff provides no admissible evidence to dispute these facts. The parties agree that Plaintiff left the building in his Mercury immediately after the victim was stabbed. ECF No. 65 at 1. Plaintiff generally asserts that there was no warrant prior to the invasion of his residence, ECF No. 73 at 2; however, Plaintiff does not explain any basis for his belief that Defendant Wohlegemuth's search of Plaintiff's residence or the search of Plaintiff's car occurred prior to the signing of the warrant. Plaintiff provides no witness statements, surveillance footage, or anything at all to dispute Defendants' assertion. As Defendants aptly point out, speculation alone is insufficient to defeat summary judgment. *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019); *see also Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)

("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."). As such, the Court finds that the undisputed facts show that these searches occurred pursuant to a valid search warrant, and the searches were therefore presumptively valid. The Court will accordingly grant Defendants' motion for summary judgment as to Defendant Wohlegemuth's search of Plaintiff's residence and as to Defendant Wohlgemuth's and Defendant Comstock's search of Plaintiff's car.

### 4. CONCLUSION

For the reasons explained above, the Court finds that Defendants' three separate searches in this case were reasonable, and will therefore grant Defendants' motion for summary judgment as to all claims. The Court will accordingly dismiss this case with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' amended motion for summary judgment, ECF No. 58, be and the same is hereby **GRANTED** as provided in this Order; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of December, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.